# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

In the Matter of the Search of )
*(Briefly describe the property to be searched or identify the person by name and address)* )
) Case No. 1:23MJ271-1
Information associated with the cellular device assigned call number (980) 371-6785 that is stored at premises controlled by Verizon Wireless )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____New Jersey_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2114(a); | Assault of a Mail Carrier with Intent to Rob or Steal Property of the United States, |
| 18 U.S.C. § 1708; and | or Robbery of a Mail Carrier to Steal Property of the United States; Theft of United |
| 18 U.S.C. § 1704 | States Mail; and Theft of a U.S. Postal Service Mail Key |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Jessica Adams
*Applicant's signature*

Jessica Adams, United States Postal Inspector
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 6/26/2023 4:03 pm

[signature]
*Judge's signature*

City and state: Durham, North Carolina
The Honorable Joe L. Webster, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (980) 371-6785 THAT IS STORED AT PREMISES CONTROLLED BY VERIZON WIRELESS | 1:23MJ271-1 |

**AFFIDAVIT IN SUPPORT OF
APPLICATIONS FOR SEARCH WARRANT**

I, Jessica Adams, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(980) 371-6785** ("Subject Phone"), that is stored at premises controlled by Cellco Partnership d/b/a Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921 (the "Provider"). The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) to require the Provider to disclose to the government copies of information further described in Section I of Attachment B. Upon receipt of the information described in Section I of

Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Postal Inspector employed by the U.S. Postal Inspection Service. I have been a Postal Inspector since 2014. As part of my current duties, I investigate instances of fraud and violent crimes, but not limited to, those involving the use of the United States Postal Service. I received my basic training as a criminal investigator at the U.S. Postal Inspection Service Academy in Potomac, Maryland. Over the years, I have received training in the areas of financial fraud, computer forensics, white-collar crime, robberies, and burglaries. I have been the case agent in numerous criminal investigations. I have authorized and sworn to numerous affidavits in support of federal search warrants and federal arrest warrants. I have personally participated in executing search warrants and seizing evidence, including computers and other electronic equipment. As a Postal Inspector, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations and to make arrests for federal felony violations, and a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent

engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2114(a), 18 U.S.C. § 1708, and 18 U.S.C. § 1704 have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## RELEVANT STATUTES

6. 18 U.S.C. § 2114(a) states that "A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money

or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years."

7. 18 U.S.C. § 1708 criminally punishes, "Whoever, steals [or] takes . . . from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, . . . Shall be fined under this title or imprisoned not more than five years, or both."

8. 18 U.S.C. § 1704 criminally punishes, "Whoever steals, purloins, embezzles, or obtains by false pretense any key suited to any lock adopted by the Post Office Department or the Postal Service and in use on any of the mails or bags thereof, or any key to any lock box, lock drawer, or other authorized receptacle for the deposit or delivery of mail matter, . . . Shall be fined under this title or imprisoned not more than ten years, or both."

## PROBABLE CAUSE

9. The United States is investigating the armed robbery of a USPS letter carrier during which property of the USPS was stolen. The investigation concerns violations of 18 U.S.C. § 2114(a), 18 U.S.C. § 1708, and 18 U.S.C. § 1704, described above.

10. On Friday, May 19, 2023, at approximately 12:15 p.m., Cabarrus County Sheriff Office Deputies and U.S. Postal Inspectors ("Inspectors") responded to a call for service near 255 Blackberry Trail, Concord, North Carolina 28027, after a robbery committed against a United States Postal Service ("USPS") letter carrier. Upon arrival, Inspectors spoke with the victim, whose name has the initials I.S., who reported he was robbed of his USPS-issued "arrow" key and a tray of mail. I.S. stated the assailant brandished a firearm during the robbery, demanded his keys and stole a tray full of mail. I.S. described the firearm to be black in color and believed it to be a Glock handgun, potentially a Glock 45. I.S. described the assailant as a black male between twenty-five and thirty-five years old, 5'11 – 6'0 tall and approximately 200 lbs. I.S. reported that the assailant fled the scene in a gray Dodge Charger with tinted windows displaying a tag number with red letters which could indicate a temporary tag. The victim, I.S., also stated that the car engine was very loud, and the registration plate had a cover over it.

11. Inspectors canvassed the neighborhood and retrieved surveillance footage from a camera system of one of the residents within the subdivision where the robbery occurred. The surveillance footage showed a gray or silver colored Dodge Charger, matching the description provided by the victim, casing the area at approximately 12:06 p.m. before the robbery and leaving the scene at approximately 12:12 p.m. immediately after the robbery. The Dodge Charger in the surveillance footage was gray or silver in color, had black rims, dark tinted windows, and a black spoiler. In the surveillance footage the car is very loud speeding down the street.

12. An "arrow" key and a "Modified Arrow Lock" ("MAL") key is a type of key designed and used by the USPS to unlock mail receptacles such as collection boxes and Neighborhood Delivery and Collection Box Units ("NDCBU"). Typically, "arrow" keys and MAL keys are specific to an entire city or a designated ZIP code area and can be used to unlock any USPS lock within that geographic area.

13. On May 18, 2023, the day prior to the robbery, Charlotte Mecklenburg Police Department (CMPD) responded to an armed carjacking of a 2017 Dodge Charger R/T. The Charger that was stolen from this incident was described as gray or silver, with black rims, dark tinted windows and being very loud.

14. On May 22, 2023, three days after the robbery, a suspect with initials S.D. uploaded a video to his Instagram account @paperchasemel, which is pertinent to the investigation. Earlier, on May 8, 2023, CMPD arrested S.D., on a state arrest warrant for possession of stolen motor vehicle. S.D. is a black male, twenty-nine years old, and law enforcement databases describe him as being 5' 11" – 6' 0" tall and approximately 235 pounds. A search was conducted incident to arrest, and a firearm was located on S.D. The firearm recovered from S.D. was a black Glock 19 located in his underwear. Additionally, several fraudulent checks were recovered from S.D.'s person and from within the vehicle he was observed exiting at the time. A cell phone was also seized from S.D. and subsequently a search warrant was obtained and executed on the phone. S.D. was released from the Mecklenburg County Jail on May 10, 2023. The video that S.D. uploaded to his Instagram account shows a vehicle being driven north of N. Graham St. through W. 10th St. merging onto Brookshire Blvd. in Charlotte, North Carolina. On May 22, 2023, investigators reviewed CMPD's University Division city cameras and observed a gray/silver Dodge Charger with a black spoiler, dark-tinted windows, black rims along with a black grill driving along the same location at the same date and time as the video uploaded to S.D.'s Instagram account.

15. On May 24, 2023, CMPD Officers responded to 7908 Harris Hill Lane, Charlotte, North Carolina 28269 in reference to the recovery of a stolen 2019 Mercedes Benz C300. This vehicle was reported stolen from Kannapolis, North Carolina. The victim in this case advised she thought S.D. was the suspect. The victim informed investigators that she recently met S.D. at a lounge in Charlotte named "Cru." The victim provided law enforcement with S.D.'s phone number (980) 371-6785.

16. On May 30, 2023, the forensic analysis on S.D.'s phone was reviewed, and it revealed that S.D.'s phone number at the time of arrest on May 8, 2023, was (980) 371-6785. The forensic analysis discovered messages in his phone regarding the usage and possession of USPS mail keys. On May 2, 2023, S.D. was messaging a subject "Molly" stating that, "My dumbass my brother got a key," in reference to obtaining business "slips." Slips are a slang term for checks. Additionally, "Molly" conveys that she uses her grandmother's mail key that works for the United States Post Office in Baltimore and utilizes the key when she comes home to gain access to business checks from USPS. S.D. responds to "Molly" with "get dat, I be sellin slips too." Furthermore, evidence was found regarding fraudulent activity including but not limited to "washing" checks and fraudulent financial instruments. In addition, messages

revealed an address of Vinca Circle in Charlotte, North Carolina 28213 as an address that S.D. visited frequently.

17. On May 31, 2023, CMPD officers received an anonymous tip from an individual who lived at 9616 Vinca Circle in reference to concerns about drug activity in Apartment B. The tipster provided surveillance video which shows S.D. sitting in the driver's seat of a gray/silver Dodger Charger with black rims, black spoiler, and tag cover over a paper registration.

18. A service provider lookup search for phone number (980) 371-6785 shows the wireless provider is Cellco Partnership doing business as Verizon Wireless.

19. Investigators believe that suspect S.D. was is in the possession of the Dodge Charger that was seen in the vicinity of a robbery of a United States Postal Service employee that occurred on May 19, 2023, at approximately 12:10 p.m. The information obtained from the Provider may assist in a) identifying the subscriber of the cellular device; b) placing the cellular device at or near the locations of the criminal incidents being investigated; c) showing the directions of travel after the criminal incidents, and d) revealing a pattern of communications. The information may further identify other co-conspirators that the perpetrators contacted to coordinate the criminal activities.

20. In my training and experience, I have learned that the wireless cellular providers, such as Cellco Partnership d/b/a Verizon Wireless, are companies that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21. Based on my training and experience, I know that the Wireless Provider can collect cell-site data about the Subject Phone. I also know that the Wireless Provider typically collect and retain cell-site data pertaining to

cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

22. Based on my training and experience, I know that Verizon also collects per-call measurement data, which Verizon also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

23. Based on my training and experience, I know that the Wireless Providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that the Wireless Providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the

information can be used to identify the Subject Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A).

25. I further request that the Court direct Verizon Wireless, the Provider, to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Provider, who will then compile the requested

records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

>Respectfully submitted,
>
>/s/ Jessica Adams
>Jessica Adams
>Inspector
>United States Postal Inspection Service

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this <u>26th</u> day of June, 2023, at 4:03 p.m.

_____
The Honorable Joe L. Webster
United States Magistrate Judge

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number **(980) 371-6785** ("the Account"), that is stored at premises controlled by Cellco Partnership d/b/a Verizon Wireless ("the Provider"), a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

# ATTACHMENT B

## Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period May 18, 2023 through June 22, 2023:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities linked to the Account (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2114(a) (assault on a mail carrier or robbery of a mail carrier to steal property of the United States), 18 U.S.C. § 1708 (theft of United States Mail), and 18 U.S.C. § 1704 (theft of a U.S. Postal Service mail key), committed on May 19, 2023, involving S.D. and/or other unknown persons, in the form of:

   a. All subscriber and connection record information for the Account identified in subparagraph I.a. of Attachment A.

   b. Evidence indicating the geographic location of the cellular device at all times between May 18, 2023, through June 22, 2023;

   c. Evidence indicating the identity of the person(s) who created the account associated with the cellular device and/or used the cellular device between May 18, 2023, through June 22, 2023;

   d. Evidence indicating how, when, and by whom the cellular device and associated cellular service was used at the time of the creation of evidence otherwise subject to seizure pursuant to this warrant.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation,

and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

This warrant authorizes a review of electronically stored information, communications, other records, and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, law enforcement agents may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.